IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CYNTHIA STEINER,            )
                            )
       Plaintiff,           )
                            )
   v.                       )   Case No. 16-cv-1286-MJR-DGW
                            )
SHERIFF MICHAEL EVERETT,    )
WAYNE CNTY. SHERIFF'S DEPT.,)
and WAYNE CNTY. ILL.,       )
                            )
       Defendants.          )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

   I.    Introduction

This matter comes before the Court on Plaintiff's Motion to Strike the Affirmative Defenses (Doc. 17) set forth by Defendants in their answer to the complaint (Doc. 12). This Court enjoys jurisdiction to hear the case as a matter of federal question jurisdiction, pursuant to 28 U.S.C. § 1343.[1] The underlying dispute contains a litany of claims of discrimination, harassment, and retaliatory termination by Plaintiff against her former boss, Sheriff Michael Everett, and employer, Wayne County Sheriff's Department and Wayne County (Doc. 1). There are 17 claims in total. Defendants

---

[1] Counts 9-17 rely on Illinois law, and closely mirror the claims under federal law. At this juncture, the Court finds it appropriate to exercise supplemental jurisdiction (18 U.S.C. § 1367) over these claims for purposes of judicial efficiency. If, later in the proceeding, the federal claims for some reason dissipate, the Court reserves the right to discontinue its exercise of supplemental jurisdiction.

answered the complaint, and in doing so, they also raised six 'affirmative defenses' (Doc. 12). Plaintiff responded in a timely fashion (Doc. 20). The matter is now before the Court for a ruling.

II.     Facts

All of Plaintiff's claims stem from two essential contentions—(1) that she was treated unfairly on the job based on her age and gender; and (2) that she never received appropriate accommodations for her documented disabilities. As a culmination of these problems, Plaintiff alleges that she was ultimately terminated in a retaliatory fashion. Plaintiff is a 62-year-old female who was (or is) employed by the Wayne County Sheriff's Department (Doc. 1 at 4). Her employment began on December 1, 1996, and continued by her account until March 1, 2016, when she alleges that she was constructively terminated (*Id.* at 4, 11-12). Defendants take issue with the end date of her employment by denying it, seemingly claiming that she is still employed but is not allowed to work because she has refused to participate in a 'fit for duty' examination to assess her on-the-job capabilities (*See* Doc. 12 at 4, 35).[2] During the relevant time period for this case, Plaintiff was first in seniority of all of her colleagues (Doc. 1 at 4; Doc. 12 at 5).

---

[2] Defendants assert as an affirmative defense that they have not in fact terminated Plaintiff, but that she has been unable to report to work because of her refusal to comply with administrative proceedings or to submit to an examination (Doc. 12 at 35).

Plaintiff alleges that while on the job she was subject to an ongoing saga of harassment, intimidation, and unequal treatment (Doc. 1 at 4). For example, in June 2014 she claims to have been subject to verbal harassment when a co-worker accused her of 'flipping her tits' at an inmate who had a medical issue (Doc. 1 at 4-5). Her attempts to address this treatment with higher-ups were met with further mockery by Defendant Everett (*Id.*). Plaintiff also tried to grieve the fact that male employees allegedly left the bulk of cleaning duties for the females, verbally commenting on how they preferred for females to do such work (*Id.* at 5). Derogatory language such as, "bitch," was directed at Plaintiff (*Id.*). After reporting these issues in a meeting with Defendant Everett, Plaintiff's working conditions deteriorated (*Id.*).

In September 2014, department positions came 'up for bid', a process which happened a number of times during the course of conduct Plaintiff is grieving in this lawsuit (*Id.*). Plaintiff bid on a dispatcher position, the type she held at the time, and that she believed she was entitled to based upon a collective bargaining agreement and seniority (*Id.* at 5-6). Rather than grant the position, Defendant Everett reassigned her to 'jailer' and told her he did so to "stop her grievances" (*Id.* at 6). The dispatcher position was given to a younger, less experienced male employee (*Id.*).

As time passed, harassment from male co-workers allegedly intensified (*Id.*). Plaintiff attempted to report the harassment to Defendant Everett, but he told her,

"those making the most money should do the most work"—something she took as a reference to her age and seniority (*Id.*).

In October 2014, male colleagues harassed Plaintiff about an August incident, calling her a "fucking lying bitch" that got "knocked off her high horse" (*Id.*). In November 2014, Plaintiff requested an accommodation to work some shifts as a dispatcher because of her medical conditions (*Id.*). Defendant Everett refused the request (*Id.*).

On November 26, 2014, Correctional Officer Curry withdrew his service weapon, pointed it at Plaintiff, and pretended to discharge it, which caused Plaintiff to be fearful (*Id.*). The weapon draw was apparently the third such incident in a few weeks (*Id.*).

Plaintiff spilled something in her work area in early December 2014, and as she went to clean the area a male colleague berated her (*Id.* at 6-7). As the verbal harassment escalated, inmates attempted to intervene on Plaintiff's behalf (*Id.* at 7). That same month Plaintiff was harassed for refusing to smuggle contraband from another correctional officer to an inmate (*Id.* at 7). In December of 2014, Plaintiff was also mocked about her hearing aids (*Id.*).

At an unspecified time, Correctional Officer Pope allegedly drew his service weapon in Plaintiff's presence, causing her to fear for her safety (*Id.*). On January 6, 2015, Correctional Officer Curry apparently sought Plaintiff out to perform a vehicle check in a degrading manner (*Id.*).

Plaintiff alleges that by January of 2015 her medical condition continued to deteriorate as a result of the harassment at work. On or about January 12, 2015, she sought, and Defendant Everett denied, an accommodation to work a portion of her weekly hours at the dispatch station—a sedentary role (*Id.*). She also sought assistance from co-workers on a variety of tasks, like kitchen duty, but no one helped her (*Id.* at 8).

Plaintiff alleges that Defendant Everett made a disingenuine attempt to correct the uneven sharing of workplace tasks by redistributing the workload across shifts and banning electronic devices (*Id.* at 8). However, the policy shift apparently did not help because it was not routinely enforced; so many duties still fell on Plaintiff's shoulders (*Id.*). Around this time, Defendant Everett also scolded another employee for voluntarily assisting Plaintiff with job duties (*Id.*).

Eventually, Plaintiff began taking excess vacation days to allow herself time to recuperate from failing health (*Id.*). On March 23, 2015, Plaintiff allegedly supplied Defendant Everett with a doctor's note documenting her need for accommodations (*Id.*). Defendant Everett refused to accommodate her, said no other position was available, and then retaliated by preventing her from participating in job training (*Id.* at 9). Male employees were sent to training, while females were not (*Id.*). Plaintiff was prevented from receiving training on multiple occasions in March, April, and June of 2015 (*Id.*). In May of 2015 positions were open for bidding, but Defendant Everett passed over Plaintiff's attempts to change her position (*Id.* at 10).

In June and July of 2015 harassment by coworkers escalated (*Id.*). Male co-workers often left extra work for Plaintiff or mocked her while she was performing her job (*Id.*). In August of 2015 male colleagues got preferential treatment on long shifts, while Plaintiff did not (*Id.*).

Around August 28, 2015, positions opened for bidding and Plaintiff again sought a reassignment, this time accompanying her request with medical documentation of her need for accommodations (*Id.* at 11). Positions with accommodations were given to males even though Plaintiff had seniority (*Id.*). In September 2015, Defendant Everett sent Plaintiff correspondence indicating that there was no position meeting her accommodation needs, and that she would need to complete a Fitness for Duty examination (*Id.*). In the interim, he placed her on paid administrative leave (*Id.*).

Plaintiff refused to let Defendant Everett attend the examination, so Defendant sent her a notice for a pre-disciplinary hearing (*Id.*). Apparently two members of the disciplinary board retired before voting on the action against Plaintiff, but it is unclear if the issue was ever heard (*Id.*).

In April of 2016 Plaintiff alleges that Defendants stopped paying her without providing a formal notice of termination or any explanation of her termination (*Id.*). Plaintiff alleges that the matter was never taken before an appropriate merit commission (*Id.* at 12).

Plaintiff alleges that the unwanted gestures and comments (about age, gender, sex, and disability) created a hostile and intimidating work environment (*Id.*). Younger male employees were not treated in the same fashion as she was with regard to sex, age, or disability (*Id.*). The cumulative effect of these issues interfered with Plaintiff's ability to adequately perform her work duties (*Id.*).

Plaintiff splits her complaint into 17 counts, as follows: (1) sexual discrimination under Title VII; (2) retaliation regarding sexual discrimination; (3) sexual harassment under Title VII; (4) retaliation regarding sexual harassment; (5) age discrimination under Title VII; (6) retaliation regarding age discrimination; (7) disability discrimination under the Americans with Disabilities Act; (8) retaliation regarding disability; (9) sexual discrimination under the Illinois Human Rights Act ("IHRA"); (10) retaliation regarding state law sexual discrimination claim; (11) sexual harassment under IHRA; (12) retaliation regarding sexual harassment under IHRA; (13) age discrimination under IHRA; (14) retaliation regarding age discrimination under IHRA; (15) disability discrimination under IHRA; (16) retaliation for disability discrimination under IHRA; and, (17) retaliatory discharge under Illinois law.

Defendants responded in a single brief with a paragraph by paragraph admit/deny style pleading, as well as via six affirmative defenses which will be enumerated below in the legal analysis portion of this Order (Doc. 12).

Plaintiff moved to strike the affirmative defenses in a motion and supporting memorandum (Doc. 17). It should be noted that the motion and accompanying memorandum are difficult to follow because of inconsistencies. For example, in the motion the Plaintiff says there are six affirmative defenses, but then in the memorandum the Plaintiff says there are five (*Compare* Doc. 17 to Doc. 17-1 at 1). In the memorandum the Plaintiff says the complaint has 17 counts, and also says it has 18 counts (*Compare* Doc. 17-1 at 1, 4). The Plaintiff also references the affirmative defenses as first, second, third, fourth, and so on, in the memorandum, but it does not appear that this classification of the defenses really tracks with their numerical labels in the answer (*Compare* Doc. 12 to Doc. 17-1). In any event, the Court interpreted the substantive and legal arguments presented by both sides in considering the request to strike. For the reasons that follow, and in spite of this confusing pleading, the Court finds it appropriate to GRANT the Motion to Strike without prejudice.

### III. Legal Analysis

Federal Rule of Civil Procedure 12(f) allows a party to move to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." **FED. R. CIV. P. 12(f).** Such a motion is typically disfavored, but a district court possesses broad discretion to grant such a motion if the circumstances justify it. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* **883 F.2d 1286, 1294 (7th Cir. 1989).** To

avoid dismissal, a defendant must present a defense in a manner consistent with the way claims must be pled. *See id.*

Defenses are pleadings, and thus this Court treats them as it would treat any claim, by applying the pleading requirements of the Federal Rules of Civil Procedure. *See id.* Defenses must set forth a short plain statement of the defense, and may be stricken if they do not present a question of law or fact sufficient on the face to satisfy Rule 8. *See id.* The Seventh Circuit has not officially decided whether the *Twombly-Iqbal*[3] standard applies to affirmative defenses, but other courts in this district and other districts in this Circuit have applied that standard. *See e.g. Brown v. Kelly Services, Inc.,* 2017 WL 1386188 (N.D. Ill. 2017) (collecting cases and deciding the *Twombly-Iqbal* standard should be applied to affirmative defenses); *West American Ins. Co v. Mund*, 2007 WL 1266543 (S.D. Ill. 2007) (granting a motion to strike affirmative defenses finding that some were mislabeled as affirmative defenses when they were mere factual disagreements, and that others were not presented with sufficient particularity).

This Court accepts all factual allegations as true when reviewing a 12(b)(6) motion to dismiss. *Erickson v. Pardus*, **551 U.S. 89, 94 (2007).** To avoid dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim sufficient to show entitlement to relief and to notify the defendant of the

---

[3] *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

allegations made against him.  FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp.*, **550 U.S. at 555-57.** In order to meet this standard, a complaint must describe the claims in sufficient factual detail to suggest a right to relief beyond a speculative level.  *Id.*; *Ashcroft*, **556 U.S. at 678;** *EEOC v. Concentra Health Servs.*, **496 F.3d 773, 776 (7th Cir. 2007)**.  A complaint need not contain detailed factual allegations, *Scott v. Chuhak & Tescon, P.C.*, **725 F.3d 772, 782 (7th Cir. 2013)**, but it must go beyond "mere labels and conclusions" and contain "enough to raise the right to relief above the speculative level," *G&S Holdings, LLC v. Cont'l Cas. Co.*, **697 F.3d 534, 537-38 (7th Cir. 2012).**  The same concepts apply to affirmative defenses.  Unless an affirmative defense sets forth new facts and arguments that, if true, will defeat a plaintiff's claim entirely, the defense may not be sufficiently pled.  *See e.g. West Am. Ins. Co.*, **2007 WL 1266543, \*1-2.**

IV. **Legal Analysis**

Here, the Defendants set forth six enumerated affirmative defenses at the conclusion of their answer to the complaint.  The six defenses span less than three pages of a 37-page brief, and are not accompanied by any substantive factual support for the legal theories asserted therein.  First, the Defendants baldly assert that the Plaintiff fails to state a cause of action as a matter of law.  The Court cannot see how this plain legal statement is sufficient, particularly where the Plaintiff has identified numerous legal theories and facts in support of her claim that she was treated unfairly on the job and was ultimately terminated in a retaliatory fashion.  Although a motion to dismiss for

failure to state a claim may be presented as a freestanding motion or in conjunction with other pleadings, such cursory treatment (in a single paragraph at the end of an answer) will not suffice to raise the issue.

Second, Defendants claim that Plaintiff's complaint was not brought within the applicable statute of limitations, but this boilerplate objection is not acceptable. Plaintiff's complaint contains 17 distinct counts, some relying on state law, and others on federal law. Surely not all 17 counts are precluded by the same statute of limitations. And even if that were so, it has been less than a full calendar year since Plaintiff's alleged termination, so it seems improbable that at least the claims as to retaliatory termination would be time-barred already.

Third, Defendants argue that Plaintiff should be barred from bringing her complaint because she failed to comply with the 'grievance procedure,' which Plaintiff further clarifies in her response as a reference to a collective bargaining agreement. Administrative exhaustion can be a valid affirmative defense, but Defendant has not set forth any facts detailing the administrative procedures that Plaintiff failed to comply with, and the defense is so weakly presented that the Court is not willing to infer entire administrative or grievance procedures to speculate as to the potential validity of such a defense. *See Woodford v. Ngo*, **548 U.S. 81, 88-91 (2006) (discussing the importance of administrative exhaustion).**

Fourth, Defendants argue that a settlement agreement precludes Plaintiff's Complaint. Again, this may be true, and if true, this may be a valid defense—but the defense is presented in such a cursory fashion that the Court will not infer an entire universe of facts to support the potential defense in lieu of adequate pleading by the Defendants.

Fifth, Defendant Everett claims that he is entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Ewell v. Toney*, **853 F.3d 911 (7th Cir. 2017), quoting** *Reichle v. Howards*, **566 U.S. 658 (2012).** Once a defendant raises qualified immunity, the burden shifts to the Plaintiff to show the violation of a clearly established right. However, here, where the assertion of qualified immunity is so bare that Defendant does not even identify which acts he took that deserve immunity, or why the rights he allegedly violated were not clearly established, this Court will not yet shift the burden to the Plaintiff.

Sixth, Defendants assert that Plaintiff has not returned to work because she has refused to either attend a fit-to-work hearing/exam or to tender information about her ability to work, and thus she has abandoned her employment. This 'affirmative defense' does set forth facts contrary to those in the complaint, but because this 'defense' is no more than a direct denial of the allegations in the complaint, and a

restatement of information presented in the body of the answer, the Court finds it unnecessary to allow this assertion to proceed as an affirmative defense at this juncture.

In sum, the Court is granting Plaintiff's Motion to Strike as to all six affirmative defenses because the pleading of the defenses is so threadbare that even if facts may exist in a conceptual universe to support the theories set forth, the Court finds it improper to either infer or require the Plaintiff to infer what those facts might be. This Court does not take kindly to boilerplate filings, so the parties are urged to diligently marshal the presentation of facts and legal arguments as the case proceeds. The grant of the Motion to Strike is done without prejudice to the Defendants, such that the various theories presented may be presented in a more thorough fashion at a later date if the record supports such action.

## V. Conclusion

The Court hereby **GRANTS** Plaintiff's Motion to Strike (Doc. 17) all six affirmative defenses presented at the end of Defendants' Answer (Doc. 12).

**IT IS SO ORDERED.**

DATED: May 8, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge